

**FILED & ENTERED**

**JAN 25 2013**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gae          DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| **In re** | Case No. 2:11-bk-33861-RK |
| **RITA GAIL FARRIS-ELLISON**, | Chapter 7 |
| Debtor. | Adv. No. 2:11-ap-02899-RK |
| | |
| **DELTA COMMUNITY CREDIT UNION**, | **MEMORANDUM DECISION ON ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT AND ORDER VACATING FURTHER HEARING** |
| Plaintiff, | |
| vs. | |
| **RITA GAIL FARRIS-ELLISON**, | |
| Defendant. | |

This adversary proceeding was tried before the undersigned United States Bankruptcy Judge on December 6, 2012 on the complaint of plaintiff Delta Community Credit Union fka Delta Employees Credit Union ("Plaintiff") to determine dischargeability of debt against defendant Rita Gail Farris-Ellison ("Defendant") pursuant to Section 523(a)(6) of the Bankruptcy Code, 11 U.S.C.  Karen A. Ragland, Garwacki &

Associates, appeared for Plaintiff.  James A. Bryant II, Attorney at Law, appeared for Defendant.

On June 1, 2011, Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C.  The case was assigned case number 2:11-bk-33861-EC.[1]  A discharge was entered for Defendant on May 10, 2012.

On October 17, 2011, Plaintiff commenced this adversary proceeding by filing its complaint against Defendant, seeking a declaration that debts based on the loans it made to Defendant be deemed non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).  This adversary proceeding was assigned adversary number 2:11-ap-02899-EC.[2]  *Complaint to Determine the Dischargeability of a Debt Pursuant to 11 U.S.C. Section 523(a)(6) ("Complaint"),* filed on October 17, 2011.  On November 15, 2011, Defendant served and filed an answer denying the substantive allegations of the complaint.  *Defendant's Answer and Affirmative Defenses,* filed on November 15, 2011.

On September 4, 2012, the court approved and filed the joint pretrial order, which was entered on September 5, 2012.

On December 6, 2012, the court conducted a trial of this adversary proceeding.  At the close of the evidence at trial, the court ordered the parties to submit proposed findings of fact and conclusions of law on or before December 20, 2012, and to submit objections to the opposing parties' proposed findings of fact and conclusions of law by January 17, 2013.  Plaintiff filed its proposed findings of fact and conclusions of law on December 18, 2012.  Defendant filed her proposed findings of fact and conclusions of law on December 20, 2012.  Plaintiff filed its objection to Defendant's proposed findings of fact and conclusions of law on January 15, 2013.  Defendant filed her objection to

---

[1]  When the bankruptcy case was reassigned from Judge Ellen Carroll to Judge Robert Kwan on or about February 17, 2012, it was renumbered Case No. 2:11-bk-33861-RK.

[2] When the bankruptcy case was reassigned from Judge Ellen Carroll to Judge Robert Kwan, this adversary proceeding was renumbered Adv. No. 2:11-ap-02899-RK.

Plaintiff's proposed findings of fact and conclusions of law on January 17, 2013.  The court set a further hearing after the deadline for filing objections to proposed findings of fact and conclusions of law for February 19, 2013.

Having considered the testimony and other evidence admitted at trial and the oral and written arguments of the parties, the court now takes the matter under submission and issues this memorandum decision.

The court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a) and (b)(1) and (2)(I) and 1334.  Venue is proper in this judicial district.  This adversary proceeding is a core matter.

The court makes the following findings of facts and conclusions of law based on facts previously determined in the court's joint pretrial order entered on September 5, 2012 as well as facts determined on the evidence admitted at trial. *Joint Pre-Trial Order,* entered on September 5, 2012.

## FINDINGS OF FACT

1. On or about May 12, 2005, Defendant signed a Loanliner Open-End Disbursement Receipt Plus ("Agreement #1"), wherein she pledged to Plaintiff a security interest in a 2004 BMW 645 CI vehicle, Vehicle Identification Number ("VIN") WBAEK73484B321234 (the "BMW").

2. On or about February 2, 2007, Defendant signed a Loanliner Open-End Disbursement Receipt Plus ("Agreement #2") wherein she pledged to Plaintiff a security interest in a 2007 Harley-Davidson motorcycle, VIN 1HD1HH2307K808961 (the "Harley").

3. Plaintiff perfected its security interests in the BMW and Harley with the California Department of Motor Vehicles.

4. In 2009, Defendant defaulted on the loan payments required by Agreement #1 and Agreement #2.

3

5.  On or about September 2009, Plaintiff repossessed from Debtor a 2001 Ford Expedition vehicle at Debtor's former residence in Winchester, California.

6.  As a result of Defendant's loan defaults, Plaintiff retained a repossession agency, Interstate Recovery, to recover the BMW and Harley from Defendant.

7.  On September 29, 2009, Defendant agreed to cure the delinquencies under Agreements #1 and #2 by making payment arrangements with Plaintiff to pay them by October 9, 2009 ("Payment Arrangements"). Defendant was aware that Plaintiff would resume its repossession efforts of the BMW and Harley if Defendant failed to comply with the Payment Arrangements. As a result of the Payment Arrangements, Plaintiff called Interstate Recovery to hold off on all attempts to repossess the BMW and Harley.

8.  On October 2, 2009, Defendant called Plaintiff and requested an additional 3 to 4 months to cure the delinquencies on Agreements #1 and #2.  Defendant refused to agree and denied this request.

9. After October 2, 2009, Defendant made no further payments to Plaintiff and there were no further conversations between Plaintiff and Defendant regarding repayment, but Defendant continued to use the vehicles.

10. On October 6, 2009, Plaintiff instructed Interstate Recovery to resume its efforts to repossess the BMW and Harley.

11. Between October 6, 2009 and October 20, 2009, Interstate Recovery made numerous attempts to recover the BMW and Harley at all of the known addresses for the Defendant, including Defendant's residence and place of work.

12. Interstate Recovery was unable to locate the BMW and Harley because Defendant concealed these vehicles either in her garage and/or at another location while she continued to use the vehicles after October 2, 2009.

13.  On October 20, 2009, Plaintiff ceased its repossession efforts of the BMW and Harley.

14.  As of March 2010, the fair market value of the BMW was $21,865.00, and the fair market value of the Harley was $9,220.00.

4

15. On November 18, 2010, the Superior Court of California for the County of Riverside entered an "Order for Writ of Possession" ordering Defendant to transfer possession of the BMW and Harley to Plaintiff.

16. On February 10, 2011, the Riverside County Superior Court entered judgment in favor of Plaintiff and against Defendant in the total amount of $62,980.93 and awarding Plaintiff possession of the BMW and Harley.

17. On June 1, 2011, Defendant filed a voluntary Chapter 7 bankruptcy petition.

18. On August 9, 2011, this Court entered an order granting Plaintiff relief from the automatic stay to continue its efforts to repossess the BMW and Harley.

19. On October 17, 2011, Plaintiff filed a complaint objecting to the dischargeability of its claims under 11 U.S.C. § 523(a)(6).

20. On December 6, 2012, this Court held a trial on Plaintiff's nondischargeability complaint.

21. To date, Plaintiff has not recovered the BMW or Harley from Defendant.

22. At the trial, Defendant testified that the BMW and Harley were stolen in 2009 or 2010. The court finds the testimony of Defendant lacks credibility because after discovering the BMW was missing in late 2009 and the Harley was missing in early 2010 as she testified at trial, Defendant did not promptly file a police report for any of the missing vehicles, and she did not file a claim with her insurance company regarding the loss of the vehicles. Defendant testified that she believed that the missing vehicles were repossessed by Plaintiff, but she did not contact Plaintiff to confirm that it repossessed the vehicles. The court does not find Defendant's testimony to be credible as well on this point because previously, she had contacted Plaintiff about her missing 2001 Ford Expedition vehicle, confirmed that that vehicle had been repossessed by Plaintiff and complained about the repossession.

23. The court infers from the circumstances in this case and finds that Defendant concealed the BMW and Harley from Plaintiff and its agents to delay and deter Plaintiff's collection efforts. Defendant knew she was in default on the loans made by Plaintiff to

5

her for the BMW and the Harley, and she knew that Plaintiff would be attempting to enforce its security interests in the vehicles and to repossess these vehicles because she had defaulted on the loans and the Payment Arrangements because Plaintiff refused her request for a further extension of Payment Arrangements.  Plaintiff declined to voluntarily turn over the vehicles after Plaintiff turned down her request for more time to cure the loan delinquencies.  Plaintiff was also aware that Plaintiff had previously repossessed another one of her vehicles, the 2001 Ford Expedition, for a loan default.  Plaintiff was in control of the vehicles after she defaulted on the loan and Payment Arrangements and later when the vehicles were "missing."  Defendant's actions, or more accurately, non-actions when the vehicles were missing (i.e., not making a police report when the vehicles became missing, not filing an insurance loss claim when the vehicles were missing), and not confirming with Plaintiff whether it had repossessed the vehicles indicates that she knew what happened to them and that she knew that they were not repossessed by Plaintiff.  Defendant only attempted to file a police report in September 2011, several years after she discovered that these vehicles under her control were missing, indicating a lack of concern over the vehicles, which the court infers shows that she concealed the vehicles and caused their transfer to others.  Defendant had no plausible explanation for the loss of the vehicles under her control, and thus, the court did not find Defendant's trial testimony in general that she did not conceal the vehicles to be credible.

## CONCLUSIONS OF LAW

1. Section 523(a)(6) of the Bankruptcy Code, 11 U.S.C., excepts from discharge of a debtor any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity."

2. A debt from conversion of property under California law may be deemed nondischargeable if the court finds the debtor committed the conversion with the subjective intent to cause an injury or an objective substantial certainty of harm.  *Thiara v.*

*Spycher Bros. (In re Thiara)*, 285 B.R. 420, 432-433 (9th Cir. BAP 2002). The court finds that the circumstantial evidence here indicates Defendant's subjective intent or knowledge of substantial certainty of harm to Plaintiff with respect to its collateral. Defendant knew that after she defaulted on the loans from Plaintiff, Plaintiff would be attempting to recover its collateral by repossessing the vehicles. She refused to turn over the vehicles to Plaintiff after it denied her request to further extend her time to cure the loan delinquencies, and vehicles became missing under her control. The circumstances of the loss of the vehicles indicate that Defendant had the subjective intent or knowledge of substantial certainty of harm to Plaintiff as indicated in her overall indifference with the loss of the vehicles as shown by her failures to file prompt police reports for their loss and to file loss claims with an insurance company. *In re Thiara,* 285 B.R. at 432-433.

       3. In California, "[t]he elements of a conversion cause of action are (1) plaintiffs' ownership or right to possession of the property at the time of the conversion; (2) defendants' conversion by a wrongful act or disposition of plaintiffs' property rights; and (3) damages." *Hartford Financial Corp. v. Burns*, 96 Cal.App.3d 591, 598 (1979) (citation omitted). In this case, conversion of the vehicles shows malicious injuries because there were wrongful acts of conversion of Plaintiff's collateral which was done intentionally as inferred by the court based on the circumstantial evidence discussed above and done without just cause or excuse. *In re Thiara,* 285 B.R. at 433. There was simply no excuse or just cause for the loss of Plaintiff's collateral by Defendant. The circumstances here lead this court to conclude that Defendant converted Plaintiff's collateral because she continued to use Plaintiff's collateral, the vehicles, after defaulting on the loans secured by the collateral and refusing to pay for the vehicles or return them to Plaintiff, knowing that Plaintiff would be attempting to repossess the vehicles, and the vehicles were "lost" while in her control and under suspicious circumstances. *Hartford Financial Corp. v. Burns,* 96 Cal.App.3d at 598 (tort of conversion defined as "Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein").

4. Under California Civil Code, § 3336, the damages caused by the wrongful conversion of personal property is presumed to be "[t]he value of the property at the time of conversion, with the interest from that time…."

5. In this case, Plaintiff had a right to immediate possession of its collateral, the BMW, upon Defendant's default under Agreement #1.

6. Defendant wrongfully retained possession of the BMW under her control by intentionally concealing the BMW from Plaintiff.

7. As a result of Defendant's concealment of the BMW, Plaintiff suffered damages that were substantially certain to occur.

8. Therefore, Defendant's intentional concealment of the BMW, Plaintiff's collateral under the security agreement, constitutes a conversion of its property under California law, and the debt from the loss of that property is nondischargeable pursuant to 11 U.S.C. § 523(a)(6) as debts from willful and malicious injuries.

9. As a result of Defendant's intentional conversion of the BMW, the debt owed to Plaintiff by Defendant secured by the BMW is deemed nondischargeable under 11 U.S.C. § 523(a)(6) up to the value of the BMW at the time of Defendant's conversion of the BMW, which was $21,865.00, plus interest allowable under California Civil Code, § 3336.

10. Upon Defendant's default under Agreement #2, Plaintiff had a right to immediate possession of its collateral, the Harley.

11. Defendant wrongfully retained possession of the Harley under her control by intentionally concealing the Harley from Plaintiff.

12. As a result of Defendant's concealment of the Harley, Plaintiff suffered damages that were substantially certain to occur.

13. Therefore, Defendant's intentional concealment of the Harley, Plaintiff's collateral under the security agreement, constitutes a conversion of its property under California law, and the debt from the loss of that property is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

8

14. As a result of Defendant's intentional conversion of the Harley, the debt owed to Plaintiff by Defendant secured by the Harley is deemed nondischargeable under 11 U.S.C. § 523(a)(6) up to the value of the Harley at the time of Defendant's conversion of the Harley, which was $9,220.00, plus interest allowable under California Civil Code, § 3336, plus all of Plaintiff's expenses allowable under Agreement #2.

15. This memorandum decision constitutes the court's findings of fact and conclusions of law.

16. The court having issued this memorandum decision adjudicating the matters raised by the complaint hereby vacates the further hearing in this adversary proceeding set for February 19, 2013 at 1:30 p.m. No appearances are required on February 19, 2013.

17. However, in order to determine the amount of the judgment, the court orders that Plaintiff file declarations and other evidence to substantiate the amount of interest on the value of the vehicles under California Civil Code, § 3336, and the expenses provided under Agreement #2, including attorneys' fees permitted under state law or the Bankruptcy Code and further briefing showing entitlement to expenses and attorneys' fees under Agreement #2. The court does not award expenses under Agreement #1 because no evidence of the security interest containing a provision for allowance of expenses to Plaintiff was offered into evidence. Exhibit 1 received by the court into evidence does not contain a copy of the security agreement with the expense provision. Plaintiff is ordered to file such declarations and evidence on or before February 28, 2013. Defendant may file objections to such declarations and evidence on or before March 15, 2013. Either party may request a hearing on the computation of the amount of the judgment by filing a request for hearing and noticing the matter for hearing with 21 days

///

9

Main Document    Page 10 of 11

1 | notice of hearing in accordance with Local Bankruptcy Rule 9013-1.  If no hearing is
2 | requested, the matter will be taken under submission as of March 15, 2013, and the court
3 | will rule on the computation of the judgment amount on the papers without further
4 | hearing.
5 |         IT IS SO ORDERED.
6 |                                                     ###

Date: January 25, 2013

Robert Kwan
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **MEMORANDUM DECISION ON ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT AND ORDER VACATING FURTHER HEARING** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **January 24, 2013**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below:

James Bryant    james.bryant@thecalawgroup.com
Sam S Leslie (TR)    sleslie@trusteeleslie.com, sleslie@ecf.epiqsystems.com;trustee@trusteeleslie.com
Karen A Ragland    Karen.Ragland@prodigy.net, garwackilaw2@prodigy.net
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by U.S. Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

Rita Gail Farris-Ellison
1921 W 36th Street
Los Angeles, CA 90018

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☐ Service information continued on attached page